UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Heller's Gas, Inc., : | |
|            Plaintiff : | |
| v. : | |
| : | No. |
| International Insurance Company of : | |
| Hannover Ltd. and International Insurance : | |
| Company of Hannover SE, : | |
|            Defendants | |

## COMPLAINT

AND NOW comes Heller's Gas, Inc., by and through its attorneys, Reager & Adler, P.C., and avers the following in support of its Complaint in civil action:

1. Heller's Gas, Inc. (hereinafter "Heller's" or "Plaintiff") is a Pennsylvania corporation with its principal place of business located at 500 North Poplar Street, Berwick, Columbia County, Pennsylvania.

2. Defendants, International Insurance Company of Hannover Ltd. and International Insurance Company of Hannover SE (hereinafter collectively "Hannover" or "Defendant"), have places of business located in London, United Kingdom and Hannover, Germany and conduct regular business in the Commonwealth of Pennsylvania.

3. The citizenship of the parties is diverse and the amount in controversy is in excess of $75,000, exclusive of interest and costs, thereby giving this Court jurisdiction under 28 U.S.C §1332.

4. Hannover issued a commercial output insurance program property policy of insurance to Heller's on its business operations and buildings, including the building located at 1560 Holly Pike, Carlisle, Cumberland County, Pennsylvania. Pursuant to this policy, Heller's properties were covered for various accidental damages including, but not limited to,

damages associated with sinkholes, surface water and subsurface water. A true and correct copy of the Insurance Policy is attached hereto as Exhibit "A."

5. The policy at issue provided cover age for the time period of May 28, 2013 to May 28, 2014.

6. Heller's made a timely claim concerning a loss experienced on or about October 11, 2013, at its property at 1560 Holly Pike, Carlisle, Cumberland County, PA.

7. Hannover conducted an investigation of the claim and was assisted in those efforts by its agent/broker, Energi Insurance Services, Inc., and Hannover's authorized claim representative, York Risk Services Group, Inc.

8. Hannover's representatives were at the location of the loss and made direct observations of the circumstances associated with the loss.

9. The loss location encompassed a portion of Heller's property that housed six 30,000 gallon tanks that were filled almost to capacity with liquid propane with a total volume of approximately 136,800 gallons.

10. On or about October 11, 2013, evidence of a sinkhole beneath the location of the tanks and damage to the tanks, the tanks' pipes, the tanks' supports, and the tanks' foundation was visible.

11. Further investigation by Hannover, Heller's and third-parties confirmed the presence of sinkhole activity beneath the tanks.

12. Upon the appearance of sinkhole activity, Heller's took immediate action dispatching bulk transport trucks to the location to empty the bulk storage tanks in an effort to prevent further property damage and to prevent injury and loss of life.

13. Pursuant to the terms of the policy, Heller's was required to take all reasonable steps to protect covered property at and after an insured loss to avoid further loss.

14. The policy provides that Hannover will pay the reasonable costs incurred by Heller's for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against if the peril insured against has already caused a loss to covered property.

15. Over the course of a week, Heller's, with assistance from third-party vendors, removed the liquid propane from the tanks and transported the liquid propane to other Heller's facilities.

16. After the tanks were emptied and vapor was removed, the tanks were disassembled, loaded onto flatbed trailers via cranes and, along with the tank supports, were moved to stable ground.

17. Heller's and its outside vendors worked diligently and expeditiously to mitigate its loss.

18. During the course of these operations, representatives of Hannover were on scene.

19. The on scene representatives of Hannover provided assurances to representatives of Heller's that there would be coverage for this loss.

20. After the tank and tank supports and their contents were no longer at risk for further damage and explosion, the process of filling and stabilizing the sinkhole commenced followed by the efforts to repair the tanks and put the tanks and their supports back into place before they could be replenished with over 150,000 gallons of liquid propane. All of these efforts came at great expense to Heller's.

21. At all times, Hannover was aware of the significant efforts by Heller's and third-party vendors to prevent further loss to insured property and potential injury and loss of life.

22. By correspondence dated October 29, 2013, Hannover denied coverage for the loss characterizing the event as a sinkhole and stating that sinkhole collapse is a type of loss specifically excluded under the contract. See Coverage Denial Letter of October 29, 2013 attached hereto as Exhibit "B."

23. Hannover's position, that sinkhole collapse is a loss specifically excluded under the policy, was a blatant misrepresentation of the policy terms.

24. Hannover never retained any experts, nor did it conduct any investigation, to determine if the cause of the loss was anything other than a sinkhole.

25. Hannover never identified another excluded peril under the policy as the reason why it has denied coverage.

26. At the request of Hannover, on September 8, 2014, Heller's submitted a Sworn Statement of Proof of Loss. A copy of the Sworn Statement in Proof of Loss is attached hereto as Exhibit "C."

27. In response, Hannover agreed to pay only $5,000 under the emergency removal expense coverage within the policy. Further coverage was denied.

28. By denying coverage beyond the nominal $5,000 payment, Hannover has failed to comply with the coverage requirements of the policy of insurance regarding loss of net income and extra expenses that are incurred during the restoration period and coverage for commercial output, income, earnings, and extra expenses to cover the loss from the date the covered property that incurred the loss is rebuilt, repaired, or replaced and business is resumed;

expediting expenses coverage; emergency removal coverage; covered equipment coverage, covered property coverage; business personal property coverage; consequential loss coverage; debris removal coverage; direct physical loss coverage; inventory and appraisal expense coverage; increased cost to repair or replace coverage; water below the surface coverage; surface water coverage; underground pipes, pilings, bridges, and roadways coverage; accounts receivable coverage; protection of property coverage; newly built or acquired buildings coverage; and newly built or acquired locations income coverage, all of which are provided for under the terms of the policy.

29. By letter dated April 15, 2015, counsel for Heller's requested that Hannover reconsider its denial of coverage. A copy of the correspondence of April 15, 2015 is attached hereto as Exhibit "D."

30. In response, Hannover retained coverage counsel, who, nearly one and one half years after the date of loss, authored a coverage opinion dated May 22, 2015 asserting for the first time that Hannover was denying coverage because it characterized the loss as a flood. A true and correct copy of the Coverage Opinion and Denial of Coverage letter of May 22, 2015 is attached hereto as Exhibit "E."

31. Heller's loss clearly did not involve a flood and was caused by conditions covered by the policy.

32. Up until the May 22, 2015 coverage opinion from Hannover, none of the parties involved ever disputed that sinkholes existed and were the cause of the loss. Nonetheless, a year and a half after the loss, and for the first time, Hannover claims that the sinkholes might not be sinkholes, but could, instead, be earthen depressions. No newly discovered facts are cited

as a basis for this new reason to deny coverage. Indeed, Hannover referred to a sinkhole when it first denied coverage on October 29, 2013.

33. As if those misrepresentations of the policy coverages were not enough, Hannover goes on assert, without any expert report, that the loss was caused by a defect, error or omission related to the design and construction of the property. Hannover blatantly disregards the fact that under this exclusion, the defect, error or omission would have to be the direct cause of the loss. It further disregards the language in that exclusion that, if a defect, error or omission as described in the exclusion results in a covered peril, such as a sinkhole, Hannover is obligated to cover the loss or damage caused by that peril.

34. The liberties that Hannover takes in interpreting the terms of the policy in order to support its denial of coverage are egregious and fraudulent.

35. Due to its failure to properly investigate the loss, Hannover is estopped from asserting the cause of the loss to be anything other than a sinkhole.

36. Due to Hannover's untimely assertion of other coverage exclusions, Heller's has been prejudiced by not being able to conduct its own investigation into the basis for the untimely exclusions asserted by Hannover; as such, Hannover is estopped from asserting any exclusion not specifically included in its October 29, 2013 denial of coverage.

37. At all relevant times, Hannover provided and sold various types of property insurance to consumers in Pennsylvania and was systematically engaged in substantial insurance related activities with consumers in this Commonwealth and its authorized business agents and representatives working in the Commonwealth.

38. At all relevant times, Hannover was a foreign corporation that provided and sold insurance products in Pennsylvania and this Court has jurisdiction of the state law

claims and the interests of the parties thereto as this controversy arises from specific consumer dealings, contractual duties, and the fraudulent and bad faith conduct of, and between, the respective parties alleged to have occurred in the County of Cumberland and the Commonwealth of Pennsylvania involving real estate situated therein.

39. Hannover's actual material representations, misrepresentations, misleading and/or otherwise deceptive and fraudulent utterances created expectations as to type, scope, quality and/or extent of insurance coverage being promised Heller's.

40. Heller's relied on those false, misleading, material, factual representations/misrepresentations or omissions in deciding to pay Hannover's required premiums in exchange for said insurance coverage, and the renewal of said coverage.

41. Hannover has denied Heller's claim for coverage under the policy without any reasonable basis.

42. Hannover has denied Heller's claim for coverage under the policy with knowledge of and in reckless disregard of the lack of any reasonable basis for its position.

43. Hannover has wantonly, willfully and deliberately refused to make payment of coverage due under the policy without any reasonable basis for its denial.

44. Hannover has wantonly, willfully, intentionally and deliberately refused to make payment of coverage due under the policy without any reasonable basis for its position and in reckless disregard of the rights of the Plaintiff.

45. Heller's is entitled to recover coverage under the policy, along with all other consequential damages plus interest, counsel fees, costs and punitive damages.

## COUNT I - 
## BREACH OF CONTRACT

46. Paragraphs 1 through 45 of Heller's Complaint are incorporated herein as though the same were set forth herein at length.

47. Heller's paid Hannover adequate consideration in the form of continual insurance premiums as agreed in order to purchase the promised insurance coverage.

48. Heller's insured premises experienced a covered loss while the policy was in full force and effect.

49. Heller's complied with Hannover's procedures for submitting this claim of loss.

50. Heller's claim is covered by the coverage afforded to this insured by the insurer under the policy or as expected based on expectations of Hannover, its employees, agents, and authorized representatives or affiliates.

51. Heller's claim is not excluded from coverage.

52. Hannover has refused to pay Heller's for its claim.

53. Hannover has failed to perform under the conditions of the policy and is, therefore, in breach of the terms of the insurance contract.

54. Hannover's breach of the insurance contract has caused Heller's to suffer losses in an amount in excess of $75,000, including but not limited to:

    (a) Heller's had to find other sources of funds to pay for repairs in attempt to mitigate its damages;

    (b) Heller's has been forced to expend considerable time and money to pursue this claim and attempt to force the Defendant to honor its contractual obligations;

(c) Heller's has experienced a loss of business opportunity by being forced to spend its own money on mitigation and repairs when the same money could have been used to invest in the growth and profitability of Heller's business;

(d) Counsel fees;

(e) Punitive damages;

(f) Consequential damages;

(g) Costs; and

(h) Such other relief of the Court deems appropriate.

WHEREFORE, Heller's Gas, Inc. demands judgment in its favor and against the Defendants inclusive of statutory interest, punitive damages and attorney's fees as well as fees and costs of court proceedings in an amount in excess of the jurisdictional limits of this Court.

A JURY TRIAL IS DEMANDED.

## COUNT II - STATUTORY BAD FAITH

55. Paragraphs 1 through 54 of Heller's Complaint are incorporated herein as though the same were set forth herein at length.

56. Heller's is a Pennsylvania insured and operates in Pennsylvania.

57. Hannover, its employees, agents, authorized representatives, affiliates are insurers operating in the Commonwealth of Pennsylvania.

58. Hannover, its employees, agents, authorized representatives or affiliates offered for sale and sold insurance products and services to Heller's in the form of an insurance contract or policy for property damage.

59. Hannover, its employees, agents, authorized representatives or affiliates also received a claim of loss from Heller's and denied it without good cause or proper investigation.

60. Hannover's actions, inactions, and aforementioned conduct in the handling of Heller's damage claim constitutes business activities which are governed in part or in whole by the aforementioned statutory provisions of 40 P.S. §1171.1 et seq. and 73 P.S. §201 et seq. as well as, here, in this context, the provisions of 42 Pa. C.S. A. §83.71.

61. The actions of Hannover, its employees, agents, authorized representatives or affiliates were deceptive and unfair trade practices and departures from the accepted insurance industry standards and are not good faith practices and therefore violate the Insurance Bad Faith Statute as more particularly described herein.

62. Hannover had a duty to operate at all times under a duty of good faith and fair dealing.

63. Hannover's breach of duty to exercise good faith and fair dealing is manifested by conduct consisting of violations of contractual duties to exercise due care, good faith and fair dealing; violations of fiduciary responsibilities of an insurer to its insured such as unreasonably failing to consider relevant information to the acceptance or denial of a claim and denying the claim without a reasonable basis; and dealing with the insured in a manner that departs from the standard of insurance practices and terms of the insurance contract.

64. Hannover, its employees, agents, authorized representatives or affiliates committed the aforementioned violations of accepted industry practices.

65. In so doing, Hannover, its employees, agents, authorized representatives or affiliates departed from the ascertainable insurance industry standards and its own guidelines.

66. Hannover's conduct towards Heller's was calculated to deceive, mislead and cause confusion as to the rights and responsibilities of the parties as well as the products and services offered for sale, purchase and the reliance thereon.

67. Defendant, its employees, agents, authorized representatives or affiliates have misrepresented the advantages, conditions or terms of the applicable insurance policy period.

68. Defendant, its employees, agents, authorized representatives or affiliates have made false or misleading statements as to the insurance policy and its available coverages.

69. Defendant, its employees, agents, authorized representatives or affiliates have mislead or misrepresented the terms and conditions of the applicable policy on which its insured has operated and relied upon.

70. Defendant, its employees, agents, authorized representatives or affiliates have denied a claim and refused to pay for a claim, have refused to act in accordance with the insurance policy or insurance standards, and have rejected coverage under an insurance contract.

71. Defendant, its employees, agents, authorized representatives or affiliates have excluded or limited coverage under an insurance policy or insurance contract for losses incurred.

72. The actions of Defendant, its employees, agents, authorized representatives or affiliates were reckless and motivated by self-interest, pecuniary gain, or ill will.

73. Defendant, its employees, agents, authorized representatives or affiliates have asserted as a basis for denial, a cause that is not based on the facts of the loss.

74. Defendant, its employees, agents, authorized representatives or affiliates have asserted as a basis for denial, a cause different than and inconsistent with the terms of the policy.

75. Defendant, its employees, agents, authorized representatives or affiliates have asserted as a basis for denial, a cause different than and inconsistent with Defendants' first basis for denial.

76. Defendant, its employees, agents, authorized representatives or affiliates have denied Plaintiff's claim for coverage without a full and complete investigation.

77. Defendant, its employees, agents, authorized representatives or affiliates have denied Plaintiff's claim for coverage without considering all available evidence.

78. Defendant, its employees, agents, authorized representatives or affiliates failed to promptly honor Plaintiff's claim for coverage.

79. Defendant, its employees, agents, authorized representatives or affiliates have wrongfully denied Plaintiff's claim for coverage even though Defendant accepted premiums from Plaintiff for the coverage that Defendant denied.

80. Defendant, its employees, agents, authorized representatives or affiliates acted in a dilatory and obdurate manner in handling Plaintiff's claim for coverage.

81. Defendant, its employees, agents, authorized representatives or affiliates wantonly, willfully and intentionally disregarded the property and clear coverage interpretation of the policy.

82. Defendant, its employees, agents, authorized representatives or affiliates recklessly disregarded the rights of the Plaintiff by misinterpreting and misconstruing the policy so as to deny and disclaim coverage.

83. Defendant, its employees, agents, authorized representatives or affiliates violated the Unfair Claim Settlement Practices Act, 31 Pa. Code §146.1, et seq.

84. Defendant, its employees, agents, authorized representatives or affiliates violated the statutes and regulations governing the actions and practices of insurers in Pennsylvania.

85. As a direct result of this calculated deceptive conduct, Heller's sustained certain real and serious injuries and irreparable consequential harm with associated monetary damages.

86. Heller's has a right to assert a claim against Hannover under the Bad Faith Statute at 48 Pa. C.S.A. §8371.

87. In addition to Heller's actual damages pursuant to this statute, Heller's is entitled to the following:

(a) interest on the amount of the claim from the date that the claim was made by the insured in an amount equal to the prime rate of interest plus three percent (3%);

(b) punitive damages against the insurer;

(c) consequential damages;

(d) court costs;

(e) attorney's fees against the insurer; and

(f) all damages for the breach of the common law duties of good faith and fair dealing in the policy issued by the Defendant.

WHEREFORE, Heller's Gas, Inc. demands judgment in its favor and against the Defendants inclusive of statutory interest, punitive damages and attorney's fees as well as fees and costs of court proceedings in an amount in excess of the jurisdictional limits of this Court.

A JURY TRIAL IS DEMANDED.

Respectfully submitted,

REAGER & ADLER, P.C.

Date:  July 9, 2015                        /s/ Theodore A. Adler
                                           Theodore A. Adler, Esquire
                                           PA I.D. No. 16267
                                           Michael T. Traxler, Esquire
                                           PA I.D. No. 90961
                                           2331 Market Street
                                           Camp Hill, PA 17011
                                           Telephone: (717) 763-1383

                                           Attorneys for Heller's Gas, Inc.